DECISION
Before this Court is an appeal from a decision of the Personnel Appeal Board of the State of Rhode Island, Department of Administration. Bruce A. Gunther (Appellant) seeks reversal of the Personnel Appeal Board's May 21, 1998 decision, which affirmed the January 31, 1997 decision of the Administrator of Adjudication. The Administrator of Adjudication had affirmed the determination of the Office of Personnel Administration not to grant the Appellant a supervisory position with the Department of Corrections. This Court has jurisdiction pursuant to G.L. 1956 §42-35-15.
 FACTS AND TRAVEL
The State of Rhode Island, Department of Administration (Appellee) includes the Office of Personnel Administration (Personnel Office), the Administrator of Adjudication (Administrator), and the Personnel Appeal Board (Board). The Appellant, a resident of Warwick, Rhode Island, was a Probation and Parole Officer II with the Department of Corrections when he applied for the position of Probation and Parole Supervisor.[1] He was also a Director/Therapist at the Rhode Island Marriage and Family Therapy Center in Providence, Rhode Island, a position he held on a part-time basis while employed full-time with the Department of Correc- tions. By 1979, the Appellant had taken at Rhode Island College and the University of Rhode Island four half-credit incentive courses, which the Office of Training and Development had documented. The Appellant did not list these courses on his application because he considered them inferior to college degrees he had already indicated.
In March 1995, as part of the application process for the position of Supervisor, the Appellant took an examination, along with over 100 other applicants.[2] On November 14, 1994, prior to the administration of the examination, Richard Gaskell and Sisson Smallman, both
Assistant Probation and Parole Administrators, reviewed the examination and determined that the questions and answers were accurate and current. After the examination, the State analyzed every question and ranked each one according to how many examinees answered it correctly.
The analysis of question number thirty-two revealed that 79.2 percent of the examinees whose test scores placed them in the highest group answered that question correctly; 8.3 percent of the examinees in this group answered the question incorrectly. The Appellant answered question number thirty-two incorrectly.
The Personnel Office utilizes an experience rating key for individuals within a career path at the Department of Corrections. This rating is also taken into account in the application process. George Simms from the Personnel Office testified that Grade A level experience is the rating for the position of Supervisor in the Probation and Parole Department. Grade B level experience is the rating for senior level Probation and Parole Officers. Finally, Grade C level experience is the rating for Probation and Parole Officers. The Personnel Office rated the Appellant at Grade C. The Personnel Office then combined each applicant's experience and education with his or her score on the written examination to determine each applicant's final score. Moreover, additional points are given to applicants who have four credits for in-service training. The Appellant did not receive points for his experience at the Rhode Island Marriage and Family Therapy Center or bonus points for the incentive courses he had taken. He was not successful in obtaining a supervisor's position.
On September 28, 1995, the Appellant appealed to the Administrator, arguing that the Personnel Office failed to give him full credit for his education and experience and failed to credit him for question number thirty-two, which he maintains he answered correctly. On January 28, 1997, the Administrator held a hearing on the matter and, on January 31, 1997, the Administrator found in favor of the Personnel Office. On February 26, 1997, the Appellant appealed the Administrator's decision to the Board. On April 23, 1998, the Board held a hearing to review the Administrator's decision. On May 21, 1998, the Board recommended that the Appellant's appeal be denied and mailed its recommendation to the Governor, accompanied by a letter requesting that the latter make his decision on the matter pursuant to G.L. 1956 § 36-4-41, a section of the Merit System Act.[3] The Governor has not made any decision regarding the appeal.
On February 1, 1999, at which time the Governor had still not issued a decision pursuant to G.L. 1956 § 36-4-41, the Appellant filed an appeal with this Court. It is the Appellant's contention that the Governor's failure to respond constitutes a de facto final decision denying his appeal.[4] He argues that this de facto final decision should be reversed because he was not credited 1) for his part-time work administering the marriage counseling program; 2) for the incentive courses he took; and 3) for an examination answer that was more correct than the answer the State deemed correct.[5] He further argues that he should prevail by default because the Appellee failed to comply with the statutory time frames at every level of administrative appeal.
 STANDARD OF REVIEW
Section 42-35-15(g) of the General Laws governs this Court's review of a contested administrative agency decision. This section provides that:
"[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, this Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Ctr.for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Board's decision.Newport Shipyard v. R.I. Comm'n for Human Rights, 484 A.2d 893 (R.I. 1984). Substantial evidence is that which a reasonable mind might accept to support a conclusion, Id. at 897 (quoting Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (1981)), even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.
Berberian v. Dep't. of Employment Sec., 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of InterestsComm'n, 509 A.2d 453, 458 (R.I. 1986). If competent evidence supports the Board's findings and conclusions, this Court is required to uphold them.R.I. Pub.
 Telecomms. Auth. v. R.I. Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). "[L]egally competent evidence is marked `by the presence of "some" or "any" evidence supporting the agency's findings.'" State v. R.I. StateLabor Relations Bd., 694 A.2d 24, 28 (R.I. 1997) (citing Envtl.Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)).
 JURISDICTION
A threshold issue, which neither party argues but which this Court raises sua sponte, is this Court's jurisdiction to hear the instant appeal. Section 42-35-15(a) provides:
"[a]ny person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy."
This section is part of the Administrative Procedures Act (APA), which applies to all agencies and agency proceedings not expressly exempted by G.L. 1956 § 42-35-18. An administrative appeal to this Court must be filed within thirty days after mailing notice of the final decision of the agency. G.L. 1956 § 42-35-15(b). The APA defines "agency" as including "each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases . . . ." G.L. 1956 § 42-35-1(a). A "contested case" is defined as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." G.L. 1956 § 42-35-1(c). A hearing must be required by law for an administrative matter to be considered a contested case.
Pine v. Clark, 636 A.2d 1319 (R.I. 1994).
A merit or civil-service-type examinee who considers himself aggrieved by the results of an examination may file with the Administrator an appeal from the score assigned him and then to the Board pursuant to G.L. 1956 §§ 36-4-40 and 36-4-41. See Code of Rhode Island Rules, vol. 1, § 60, at 45. Section 36-4-40 of the General Rules provides the aggrieved examinee an appeal hearing before the Administrator, who is required to provide notice of the hearing pursuant to G.L. 1956 §42-35-9. Section 36-4-41 provides that an examinee who is aggrieved by a decision of the Administrator may appeal to the Board, which is then required to make a report of its findings and recommendations to the Governor.
The Department of Administration and the Board are agencies by APA definition. Furthermore, they are not exempted from the APA by G.L. 1956 § 42-35-18. Though G.L. 1956 § 36-4-41 does not require the Board to conduct a hearing in order for it to render its decision on an appeal from the Administrator's decision, G.L. 1956 § 36-4-40 provides an aggrieved examinee the right to a hearing before the Administrator to determine his legal rights. If the Board elects not to conduct a hearing on appeal, it is required to base its decision on the decision of the Administrator. G.L. 1956 § 36-4-41. The requirement that the Admini- strator must hold a hearing and provide notice thereof comports with the APA's definition of "contested case," thus bringing the Merit System Act within the APA.
The APA provides that the individual "who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review . . . ." G.L. 1956 § 42-35-15(a); see also Koch, at § 13.21. Generally, when exhaustion is statutorily mandated, the failure to exhaust administrative remedies will divest the court of jurisdiction. Paton v. Poirier, 109 R.I. 401, 406, 286 A.2d 243, 245 (R.I 1972) (holding that the court did not have jurisdiction without the administrative remedies provided by statute having first been exhausted); see also Koch at § 13.21[3]. However, the futility of exhausting all administrative remedies is an exception to the exhaustion doctrine. MacQuattie v. Malafronte, 779 A.2d 633, 637 n. 2 (R.I. 2001) (noting that the case was properly before the court, despite the exhaustion doctrine, because the plaintiffs were prevented from pursuing a remedy independent of their union); see also Koch at § 13.22[4].
Section 42-35-15(a) of the General Laws statutorily mandates the exhaustion of remedies. In the present case, the Appellant had not "technically" exhausted all of the administrative remedies available to him because the Governor had not yet acted on the Board's recommendation. Nonetheless, the Appellant, after waiting over eight months for the Governor to notify him of his decision and determining that it was futile for him to continue to await that decision any longer, filed his appeal with this Court on February 1, 1999. In essence, the Governor's failure to respond to the recommendation has left the Appellant remediless under both the APA and the Merit System Act. For the Appellant to continue to wait for completion of the statutorily-mandated administrative process may cause him irreparable harm. See Koch at § 13.22[4] (discussing futility as an exception to the exhaustion requirement because "waiting for completion of the administrative process may create irreparable harm"). The thirty-day time restriction for the Appellant to file with this Court under G.L. 1956 § 42-35-15(b) is not applicable because he was never given a temporal reference via notice of a final decision in his appeal, as required by G.L. 1956 § 36-4-41. In light of the foregoing, the Appellant's claim is properly before this Court.
 STATUTORY TIME FRAME FOR HEARINGS AND DECISIONS
The Appellant argues that G.L. 1956 § 36-4-40 required the Administrator to hear his appeal of the Personnel Office's determination within fourteen days of its receipt of the appeal, and then make a decision within twenty days of the hearing pursuant to G.L. 1956 §36-4-40.2.[6] Furthermore, he argues that G.L. 1956 § 36-4-41
required the Board to decide on his appeal of the Administrator's decision within thirty days.[7] he Appellant contends that he should prevail by default because of the State's failure to meet these statutory time limits. The Appellee argues that the time periods set forth in the statute for scheduling hearings and deciding appeals are directory rather than mandatory. The Appellee maintains that while the failure to file an appeal within the statutory time period prohibits an appellate court from acquiring jurisdiction, the present case does not involve jurisdiction. Furthermore, the Appellee argues that because the Appellant alleges delay as a basis for recovery, he should have exhausted all available remedies rather than permit the delays to continue without opposition.[8]
Statutory provisions that apparently require public officers to take certain actions within a specified period of time are directory rather than mandatory. See Washington Highway Dev., Inc. v. Bendick, 576 A.2d 115, 117 (R.I. 1990) (holding that a statutory provision requiring a decision on a wetland application be rendered within six weeks is directory);Beauchesne v. David London Co., 118 R.I. 651, 661, 375 A.2d 920, 925 (R.I. 1977) (holding that statutory provisions governing workers' compensation were designed to expedite justice, and that a failure to comply therewith would not void any action taken); Providence TeachersUnion, Local 958 v. McGovern, 113 R.I. 169, 177, 319 A.2d 358, 363-64 (R.I. 1974) (holding that the statutory time provision for arbitrators to call hearings was designed to "secure order, system and dispatch," and was not mandatory). Such time requirements are generally directory unless accompanied by negative words. McGovern, 113 R.I. at 177-78, 319 A.2d at 364. While statutory requirements comprising the essence of a statute are mandatory, statutory requirements concerning notice and public hearings are directed at public officers and are incidental to a regulatory scheme. Gryguc v. Bendick, 510 A.2d 937, 941 (R.I. 1986). Therefore, imperfect compliance with the requirements do not negate an agency's actions. Id. A plaintiff who seeks judicial relief under the doctrine of exhaustion of administrative remedies and complains that the defendant's failure prejudiced him must himself have taken action during the period when the statutory time requirements were not strictly followed. See Mikaelian v. Drug Abuse Unit, 501 A.2d 721, 726 (R.I. 1985) (affirming the dismissal of a terminated employee because he failed to exhaust administrative remedies during lapse time period).
The statutory provisions that are the subject of the present case contain neither an express intention to mandate compliance with its time frames nor create a limitation on the Administrator's or the Board's power. The statutory language within the sections of the Merit System Act specified by the Appellant obliges neither the Administrator nor the Board to take action within the time frame set forth because no negative terms accompany those provisions. The subject provisions do not invalidate the untimely hearings and decisions rendered in the present matter because the provisions merely set forth the procedure for merit-based appeals rather than sanctions for untimeliness. Furthermore, the delays in the instant case did not affect the Appellant's rights because he could have sought judicial relief during the lapses in his administrative appeal, such as filing a mandamus with the Court to compel agency action. SeeBeauchesne, 118 R.I. at 661, 375 A.2d at 925 (noting availability of judicial remedies during lapses in temporal framework set forth by statute). Accordingly, the Board and the Administrator did not prejudice the substantial rights of the Appellant by delaying their respective statutory obligations.
 CREDITS
The Appellant next argues that the Personnel Office failed to give him the proper number of credits on his application. He maintains that this action resulted in his being placed lower on the supervisor's hiring list, thus preventing him from receiving a supervisor's position. Specifically, the Appellant contends that the Personnel Office failed to credit him for administering a marriage counseling program, thus denying him points for experience. He argues that the combination of his Probation and Parole Officer II position and his part-time experience as a supervisor of Master's level clinicians should at least be the equivalent of Grade B level experience. He contends that there was no requirement that an applicant's position had to be a full-time position, but, rather, the combination of jobs had to be similar to either a Grade A or Grade B level position.[9] The Appellant also contends that he was denied points for education because the Personnel Office failed to credit him for the incentive courses he had taken. Even though he did not list the courses on his application, the Appellant maintains that the Personnel Office should have credited him for them because they were documented in his personnel file. He argues that even assuming that he should not get credit for them because he did not list them, he should have received two bonus points based on his having two master's degrees in Human Service, both of which were listed on his application.
The Appellee responds that full time administration of the stipulated type program was required for an applicant to receive credit for experience, whereas the Appellant's claimed experience in an outside marriage counseling program was one that he supervised on a part time basis. The Appellee also responds that even though the Appellant had acquired the proper educational credits, he failed to list them on his application, causing the State to be unaware of them upon its review. The Appellee maintains that only the Personnel Administrator has the authority to establish a classification plan and decide the qualifications necessary for those classifications, such as education and experience. Therefore, the Appellee argues, the Appellant's contention that his master's degrees are relevant should not be considered.
Section 36-4-9 of the Rhode Island General Laws requires that the Personnel Administrator "classify all of the positions in the classified service according to the duties and responsibilities of each position." This section further requires that this classification plan "shall indicate the education, experience, capacity, knowledge, skill, and other qualifications to be required of persons appointed to positions in each class." Courts will not interfere with the activities of an administrative agency, such as one that administers merit or civil-service-type examinations, provided that the agency is fair and reasonable in the manner in which it carries on its business. Barta v.Gorodetsky, 424 A.2d 1069, 1071 (R.I. 1981) (holding that the determination of the three examiners was within the area upon which reasonable minds might differ and within the area in which their discretion should not be reversed). "[A]n administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo,768 A.2d 921, 926 (R.I. 2001). Furthermore, even when an agency regulation does not define terminology, an agency's representatives may provide testimony about how they interpret and apply such a regulation.
State v. Cluley, No. 2001-569-M.P., slip op. at 9 (R.I., filed Nov. 12, 2002). Proper judicial deference to the agency's interpretation of its regulations requires a court "to presume the validity and reasonableness of that construction until and unless the party challenging its interpretation proved otherwise." Id.
In the present case, the Appellant believes that his part-time experience outside the Department of Corrections is the equivalent of the required experience as set forth in the notice of examination. (R. at 13). The Appellee, however, rates only full-time, paid experience, and the Appellant's experience was on a part-time basis. (R. at 7). Mr. Simms testified that the experience and education requirements on the notice for the position were a prerequisite for admittance to compete for the position, and did not suggest that those competing would necessarily be credited with a higher grade level experience. (R. at 21). Moreover, the Appellant failed to indicate on his application that he had taken in-service training courses. Had he done so, as Mr. Simms testified, he would have received credit for those courses. (R. at 19). Giving this administrative interpretation the deference it is due, the Board had reliable, probative, and substantial evidence before it that the Personnel Office reviewed the Appellant's application and computed his score according to its established standards. Because the record does not show that the Personnel Office treated the Appellant unfairly or unreasonably in its administration of the job posting, this Court will not disturb its determination. The Appellant further contends that his answer to question thirty-two on the written examination was a better choice than the answer the State deemed the best choice. The Appellant maintains that he produced the only reliable evidence at the hearing about the best answer to the question because the State neither offered the statements of the two experts who reviewed the questions nor documented the statistics it proffered in an attempt to prove that the answer that the State considered correct was actually the best choice. The Appellee responds that the answer it deemed proper to the challenged question was approved by a panel of experts who had established the examination and, further, nearly eighty percent of highly-ranked applicants chose that correct answer, whereas less than ten percent from that group chose the same answer as the Appellant. The Appellee maintains that the Appellant failed to present any evidence that the answer he gave was more accurate than the one that the experts deemed correct. The Personnel Administrator's duty with respect to administering an examination is discretionary. Parente v. Southworth, 448 A.2d 769, 772 (R.I. 1982). "[E]ven if reasonable men could differ about the soundness and appropriateness of the scope and character of an examination, the judgment of the agency must prevail and is not to be interfered with by the courts in the absence of proof of bad faith or arbitrary, capricious, or illegal action." Barta, 424 A.2d at 1071. Courts will invalidate determinations of personnel agencies only where there is "clear evidence of fraud or palpable illegality which in some way negatives the competitive character of the examination." Id., n. 1. In the present case, the Appellant's testimony as to why he believed his answer choice for question thirty-two was valid (R. at 8) lacks probative evidence of some illegality on the part of the Personnel Office. Two subject matter experts had determined that the answers were accurate and up-to-date before the Personnel Office administered the examination. (R. at 3). Furthermore, the Appellee proffered evidence at the Board hearing that the percentage of those highly-ranked examinees answering the question correctly was significantly greater than those answering it incorrectly (R. at 6), further validating the answer that its experts provided. The testimony of Mr. Simms, as a representative of the Appellee, interpreting the procedure that ensures the accuracy of the examination answers must be presumed valid and reasonable. This judicial deference is particularly appropriate in light of the fact that the Appellant failed to prove otherwise. Therefore, the Board had reliable, probative, and substantial evidence before it to support its determination.
 CONCLUSION
On review of the entire record in this matter, this Court finds that the Board's decision to deny the Appellant's appeal is supported by the reliable, probative, and substantial evidence contained in the record and was not in excess of its statutory authority. The Board's decision has not prejudiced the Appellant's substantial rights. Accordingly, the Board's decision is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] At the time of the Board hearing, the Appellant was a Senior Probation and Parole Officer (B level).
[2] The application period for this examination closed on April 8, 1994.
[3] The Board found that 1) there was no evidence indicating that the State's standards for promoting members of the classified service, one of which is experience, were either unreasonable or inequitable in their application to the examination participants; 2) because of the amount of paperwork involved in administering examinations, the applicant's failure to provide necessary information must fall on the applicant; and 3) the judgment of experts, whom the State retained to determine correct answers to particular questions, should not be superseded by the judgment of a lay Board not learned in the subject matter.
[4] Pursuant to G.L. 1956 § 36-4-41, the Governor must make a decision on the appeal within fifteen days based on the Board's findings and recommendations. In the present matter, the Governor had not made his decision before the Appellant filed his appeal with this Court pursuant to G.L. 1956 § 42-35-15. The present appeal was filed on February 1, 1999 — over eight months after the Board's May 21, 1998 decision.
[5] In addition to reversing the Board's decision, the Appellant seeks 1) back pay, including benefits and seniority, for the difference between what he would have made as a supervisor and what he actually made; 2) the next available Probation and Parole Supervisor's position; 3) pay at a supervisor's level until he receives the next available position; and 4) attorney's fees.
[6] Section 36-4-40 of the General Laws provides: "Any person with provisional, probationary, or permanent status who feels aggrieved by an action of the personnel administrator may, within ten (10) calendar days of the mailing of the notice of that action, make a request in writing for an appeal hearing to the administrator of adjudication for the department of administration, and be heard within fourteen (14) calendar days of receipt of the appeal request." Section 36-4-40.2 provides, in pertinent part, that "[t]he administrator of adjudication shall, within twenty (20) calendar days of the hearing, render a decision in writing stating all pertinent facts and issues presented at the hearing . . . ."
[7] Section 36-4-41 of the General Laws provides: "Any person with provisional, probationary, or permanent status who feels aggrieved by a decision of the administrator of adjudication may, within thirty (30) calendar days of the rendering of a decision, request in writing for the personnel appeal board to review the decision or conduct a public hearing. Within thirty (30) calendar days of the receipt of the request, the personnel appeal board shall make a report of its findings and recommendations to the governor based upon the decisions of the administrator of adjudication or the testimony taken at a hearing. . . . . Within fifteen (15) calendar days of the receipt of the report, the governor shall make his or her decision and so notify the appellant, the personnel appeal board, administrator of adjudication and the office of labor relations."
[8] The Appellee argues that during the delays in decision-making, the Appellant did not exercise any of the judicial options available to him, such as filing for mandamus with the court or filing a motion to schedule a hearing with either the Administrator or the Board.
[9] As read into the record, the posting for the position of Probation and Parole Supervisor states: ". . . experience or at least three years of full-time service from employees of probation and parole counsel involving the application on the investigation, rehabilitative and techniques relative to the work of probation office and parole, or any combination of education and experience." (R. at 9).